USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/14/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IKB INTERNATIONAL S.A. IN
LIQUIDATION and IKB DEUTSCHE
INDUSTRIEBANK AG,

                Plaintiffs,

                v.

WILMINGTON TRUST COMPANY *as
Trustee (and any predecessors or successors
thereto), et al.*,

                Defendants,

                and

CWABS TRUST 2005-HYB9; *et al.*,

                Nominal Defendants.

No. 16-CV-4917 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    IKB International S.A. In Liquidation and IKB Deutsche Industriebank AG, two European financial institutions, bring this action for breach of contract and breach of the implied covenant of good faith and fair dealing against Wilmington Trust Company.[1] *See* Compl., Dkt. No. 1, Ex. B, ¶¶ 13–14, 318–322, 326–29. Plaintiffs claim that they purchased $168 million in residential mortgage-backed securities ("RMBS") issued by fifteen Delaware statutory trusts (the "Trusts") that are now worthless, and assert that Wilmington Trust, as the Owner Trustee for each of the Trusts, had a duty to protect the Trusts' assets but failed to do so. Compl. ¶¶ 1, 5–6, 59–63, 83–

---

[1] As noted below, M&T Bank Corporation was also named as a defendant in this action, but the parties have advised the Court that it will be dismissed by stipulation. *See* Def.'s Mem. 4 n.2; Pls' Opp. 1 n.1. As both parties' arguments on this motion are based on the premise that Wilmington Trust is the only remaining defendant, the Court adopts the same approach.

94.[2] Before the Court is Wilmington Trust's motion to transfer the case to the District of Delaware. For the reasons that follow, the motion is granted.

## BACKGROUND[3]

Plaintiffs commenced this action on December 30, 2015, in the Supreme Court for the State of New York, New York County. Dkt. No. 1, Ex. A. At approximately the same time, Plaintiffs filed six other nearly-identical actions, all in New York Supreme Court, and all against "defendants who served as trustee or owner trustee on other RMBS trusts purchased or owned by Plaintiffs." Groothuis Decl. ¶ 5. Those actions were consolidated for certain purposes. *Id.* ¶ 7. After the Complaint in this action was filed and served on Defendants on May 27, 2016, Defendants timely filed their removal petition on June 24, 2016. *See* Dkt. No. 1. On July 25, 2016, Plaintiffs moved to remand, arguing that Defendant M&T Bank Corporation ("M&T Bank"), which it understood to have become the successor Owner Trustee for each of the Trusts by merger with Wilmington Trust, was a proper forum defendant, making removal inappropriate. *See* Dkt. No. 11, at 2, 11. On September 26, 2016, however, Plaintiffs withdrew that motion after Defendants' opposition to remand established that M&T Bank had not become a successor trustee, and diversity jurisdiction thus existed. Dkt. No. 17.

Wilmington Trust is a Delaware-based commercial trust company that serves as the Owner Trustee of the Trusts named as nominal defendants in this action. Maney Decl. ¶¶ 4–5. The Trusts are also managed by separate "Indenture Trustees," some of which are located in New York. Groothuis Decl. ¶ 18, *id.* Ex. 4.[4] "[A]ll of the [S]ervicers and [O]riginators for the Trusts [are]

---

[2] "[A]n Owner Trustee . . . manages the Trust in its role as an issuer of securities." Compl. ¶ 4.

[3] The following facts are taken from the Complaint and the declarations submitted in connection with this motion. *See Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 23 n.1 (S.D.N.Y. 2016).

[4] "[A]n Indenture Trustee . . . manages the mortgage loans that collateralize the securities issued by the Trust." Compl. ¶ 4.

2

located somewhere other than Delaware." Pls' Opp. 13.[5]

The gravamen of Plaintiffs' Complaint is that Wilmington Trust had the duty to be "the watchman that makes sure that the other watchman (the Indenture Trustee), along with the other parties with contractual obligations to the Trust, enforce the Trust's rights," Compl. ¶ 5, but that it "sat idly by while the Indenture Trustees and other participants in the Trusts engaged in egregious and pervasive defaults of their obligations to the Trusts and the trust estate that Wilmington Trust was obligated to protect rapidly deteriorated," Compl. ¶ 6.

There are three "Governing Agreements" that set forth the parties' obligations for each Trust: the Trust Agreement, which is governed by Delaware law; an Indenture, governed by New York Law; and a Sale and Servicing Agreement, also governed by New York law. Groothuis Decl. ¶¶ 11, 16–17, Ex. 2–3. "Although the Governing Agreements for each of the Trusts were separate agreements that were individually negotiated and differed slightly in certain respects, the terms that are pertinent to the subject matter of th[e] Complaint were substantially similar in all of the Governing Agreements and imposed substantially the same obligations on the parties to the Governing Agreements." Compl. ¶ 52. According to Plaintiffs, "[p]art of Wilmington Trust's duties as Owner Trustee of the Trusts was enforcing the Trusts' rights under [other] agreements embodying the rights of the Trusts against Sellers." Compl. ¶ 53. All of the Governing Agreements were executed by Wilmington Trust at its offices in Delaware. Maney Decl. ¶ 7.

Defendant alleges, and Plaintiffs do not contest, that "Wilmington Trust Company's duties as Owner Trustee are performed and overseen by a 'relationship manager' that works in the Wilmington Trust Company's Wilmington, Delaware offices." Maney Decl. ¶ 10. Defendant has

---

[5] Servicers administer "the mortgages and properties owned by the trust for the trust's benefit." Compl. ¶ 43. "Originators" is a term for the lending institutions that make home loans, secured by a mortgage to borrowers, and then "sell these loans in bulk to an affiliate of the investment bank arranging the securitization." Compl. ¶ 38.

3

identified nine relationship managers who were involved in overseeing the Trusts at issue: six who are currently employed by Wilmington Trust and work in its Delaware office, and three who no longer work at Wilmington Trust but continue to work in Delaware. *Id.* ¶¶ 14–17. Plaintiffs point out, however, that the Governing Agreements provide that the Owner Trustee or its employees can take actions outside of Delaware and some actions related to the Trusts have taken place in New York.[6]

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party requesting transfer bears the burden of establishing by clear and convincing evidence that transfer is warranted. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

In deciding a motion to transfer venue, the inquiry is two-fold. "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016). Second, "the court must . . . determine whether transfer is appropriate." *Id.* In determining whether transfer is appropriate, courts consider several factors, including:

---

[6] The Governing Agreements also provide: that payments to or from the Trust may be made or received by the Trustee in New York; that the Indenture or Owner Trust (or its managing agent) must initially designate and/or maintain an office in New York for the registration, transfer or exchange of certificates; that certain notices required to be provided to the Indenture Trustee must be sent to New York; and that certain notices required to be provided to ratings agencies must be sent to New York. Groothuis Decl. ¶¶ 19–22.

4

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, No. 16-CV-4210 (NRB), 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017).

Plaintiffs do not dispute that this case could have been brought in the District of Delaware. *See* Pls' Opp. 7 n.2. Thus, the only question before the Court is whether transfer is appropriate. Upon consideration of the relevant factors, the Court concludes that Defendant has shown by clear and convincing evidence that transfer is appropriate and in the interest of justice.

### 1. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 (AJN), 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) (internal quotation marks omitted). Moreover, "[g]enerally, transfers from this district are substantially favored when a party has not shown that any of the operative facts arose in the Southern District of New York." *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 408 (S.D.N.Y. 2016) (internal quotation marks omitted). "The locus of operative facts of a breach of contract claim, is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Abramowitz v. Tropicana Atl. City Corp.*, No. 14-CV-2064 (JS), 2015 WL 1014511, at *3 (E.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted); *see also Everlast*

5

*World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (same).

The locus of operative facts is Delaware. Plaintiffs do not dispute that Wilmington Trust "signed the Trust Agreement for each Trust in Delaware," and that "each of the Trust Agreements places the situs of the Trust in Delaware." Pls' Opp. 12. In fact, the Owner Trustee had to be located in Delaware pursuant to the Trust Agreement, Hornung Decl. Ex. A1–A15 § 2.09, and Delaware State law, Del. Code Ann. tit. 12, § 3807. It is further uncontested that Wilmington Trust's duties were performed and overseen by relationship managers who worked in its offices in Delaware. Maney Decl. ¶ 10.

Under Plaintiffs' theory of the case, to prevail they must show that Wilmington Trust "breached [its] duty as a watchman," Pls' Opp. 5, and it is undisputed that the "watching" (or lack thereof) was to be done from Delaware. For example, Plaintiffs allege that "Wilmington Trust knew of the Servicers' improper servicing practices because it received servicing reports from the Servicers" and that "by reviewing the reports, . . . Wilmington Trust would have been well aware of the Sellers' breaches as well as the Servicers' failure to seek remedies against the Sellers for those breaches." Compl. ¶¶ 296, 297. The Complaint does not specifically allege where Wilmington Trust received and reviewed servicing reports, but it is undisputed that Wilmington Trust performed all or nearly all of its actions through its relationship managers who worked in its offices in Wilmington. *See* Maney Decl. ¶ 10. Similarly, Plaintiffs allege that Wilmington Trust "monitored the Trusts' performance," which again must have been done where its employees were located—Delaware. Compl. ¶ 237. And because all of its employees are based there, Delaware is also where Wilmington Trust would have been made "aware of Sellers' breaches of representations and warranties" and where it "failed to provide notice of those breaches and

6

defaults to Servicers," which Plaintiffs allege constituted a breach of its contractual and statutory duties. Compl. ¶ 84.

Plaintiffs argue that "Defendant['s] duties and responsibilities were governed and dictated by the actions of the other participants," as well as "their own duties and responsibilities under the Governing Agreements. These duties and responsibilities were to be performed (and thus, Plaintiffs allege, were breached), *throughout the United States*, and indeed often in New York." Pls' Opp. 12 (emphasis added). Although the national scope of the complex financial transactions underlying the alleged breaches could suggest that "this factor [is] unimportant in determining whether to transfer," *see Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012), it falls short of establishing that the locus of operative facts was in *New York*.[7]

Most importantly, however, although the actions of non-party entities may be relevant, the Plaintiffs' claims "will turn largely on issues such as what [Defendant's] employees did, [and] what they knew." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012). It is undisputed that all of Defendant's employees worked from its office in Delaware. The locus of operative facts is thus Delaware, and this factor weighs in favor of transfer.

---

[7] In particular, the Complaint references legal actions brought throughout the United States against the entities that Plaintiffs allege Defendant had the duty to monitor. For example, Plaintiffs assert that the following entities participated in settlements in cases brought by 49 states, the District of Columbia, and the federal government: Ocwen and Ocwen Loan Servicing; Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Mortgage Ventures, LLC, and Countrywide Bank FSB; Wells Fargo & Company and Wells Fargo Bank, N.A. *See* Compl. ¶¶ 114, 134, 139, 157, 262, 268. Impac Funding Corp., the Master Servicer for five of the Trusts and Impac Mortgage Holdings, Inc., the Seller for five of the Trusts, are based in the Southern District of California, Defs' Mem. 11–12, and were sued in California and Massachusetts for their involvement in allegedly troubled RMBS. *See* Compl. ¶¶ 210, 212, 218. Moreover, at oral argument, Plaintiffs noted that in addition to taking depositions in New York, they "will also be . . . deposing folks in California who are the [S]ervice[r]s, places like Impact." Tr. 22. And while HSBC Bank USA, National Association, the Indenture Trustee for eight of the Trusts, may be located in the Southern District of New York, Plaintiffs allege that HSBC Bank Inc. was sued in a nationwide class action brought on behalf of millions of homeowners. Compl. ¶¶ 266, 303. In addition, two securitizations originated by Delta Funding Corp. were the subject of suit in Wisconsin. Compl. ¶ 207.

7

## 2. Convenience of the Parties & Witnesses

The convenience of witnesses is "typically the most important factor" on a motion to transfer. *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009). And "[t]he convenience of non-party witnesses generally carries more weight than the convenience of party witnesses." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). "When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). The party resisting transfer, in this case, Plaintiffs, do not need to make the same showing of specific witnesses or their locations as Defendant because "[i]n a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would [be] inconvenienced if the suit were to remain in the forum chosen by plaintiff." *Caldwell v. Slip-N-Slide Records, Inc.*, No. 10-CV-9106 (JFK), 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011). Once Defendant has met this burden, however, Plaintiffs cannot rely on a presumption that their chosen forum will be more convenient for unidentified non-party witnesses. *Cf. Izkhakov v. Educ. Comm'n for Foreign Med. Graduates*, No. 12-CV-348 (ALC), 2012 WL 2861338, at *4 (S.D.N.Y. July 10, 2012) (considering plaintiff's failure to identify "who would testify about what" after finding defendant met its burden to identify specific witnesses who would be inconvenienced if the suit were to remain in the forum chosen by plaintiff). When considering the convenience of witnesses, courts look at "the materiality, nature, and quality of each witness, in addition to the number of witnesses in each District." *Guccione v. Harrah's Mktg. Servs. Corp.*, No. 06-CV-4361 (PKL), 2009 WL 2337995, at *7 (S.D.N.Y. July 29, 2009); *see also Izkhakov*, 2012 WL 2861338, at *3.

Transferring this case to the District of Delaware would undoubtedly be more convenient for Wilmington Trust. Defendant has identified nine potential witnesses, all of whom were Wilmington Trust relationship managers, oversaw the Trusts, performed Wilmington Trust's obligations as Owner Trustee, and live or work in Delaware. Def's Mem. 10; Maney Decl. Ex. A. Six of the nine identified witnesses are currently employed by Defendant. Maney Decl. ¶ 16. Three are former employees, Maney Decl. ¶ 17, who are non-party witnesses, although "former employees are not entitled to the same deference shown to other non-party witnesses because they are more likely willing to attend trial than other non-party witnesses," *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 437 (E.D.N.Y. 2012). It is undisputed that these current and former relationship managers will provide relevant testimony for both Plaintiffs and Defendant, and it appears that this testimony will be material to the question of liability.

While Defendant does not identify any individual witnesses by name, it identifies relevant non-party corporate entities, including Servicers, Administrators, and Originators of the Trusts, and asserts that these non-party entities are located in New York, Maryland, California, Florida, and Virginia. Def's Mem. 11–12; Hornung Decl. ¶ 7 & Ex. E. As Plaintiffs emphasize, "[n]ot a single one of these non-party entities, and thus no witnesses from these entities, are located in Delaware." Pls' Opp. 18. Two of the Indenture Trustees, HSBC Bank USA, National Association and The Bank of New York, which together are the Indenture Trustees for nine of the fifteen Trusts, are located in New York. *See* Pls' Opp. 18; Def's Mem. 12 n.13. And three non-party entities that served as Administrators, Originators, Depositors, and Sellers for some of the Trusts, were located in the Eastern District of New York, although all of these entities filed for bankruptcy in the District of Delaware in 2007 and were liquidated. Def's Mem. 12 & n.12.

At oral argument, Plaintiffs' counsel argued that witnesses from the New York non-party

entities are "essential" to Plaintiff's case. Tr. 21. According to Plaintiffs, this is because "[t]he largest number of breaches . . . that [they] allege are by the [I]ndentured [T]rustees. And HSBC and Bank of New York together were the [I]ndentured [T]rustees for the majority of the [T]rusts at issue in this case. [Plaintiffs] will definitely be deposing people. It will be essential to [Plaintiffs'] case." Tr. 20. Plaintiffs' counsel also argued that they "already know what the [D]efendants are going to say: We don't know anything about it, we don't have knowledge. [When] [p]roving knowledge by [a] defendant, frequently third parties are perhaps more valuable th[a]n what the defendants themselves may have." Tr. 21. Plaintiffs' counsel specifically represented that they intend to call witnesses from two New York non-party entities:

> I have no doubt that HSBC and Bank of New York will be providing witnesses, essential witnesses, and I know that they are both here in the district. So I'm confident about those. With regard to the other New York entities . . . that helped set up and sell the loans into the trust, Renaissance, Delta Funding and their affiliates, because they have been liquidated, I don't know for a fact and I can't without discovery locate in the first instance these folks.

Tr. 21.[8] Counsel for Defendant agreed that it's a "fair assumption" that HSBC and Bank of New York witnesses would likely be located in New York. Tr. 22.

The Court does give some weight to the fact that non-party witnesses from two New York entities will be relevant, although none were identified by name, and the Court has no information on how many witnesses from each of these entities will be necessary. While it is true that usually "[c]ourts do not consider the convenience of such unspecified, unnamed witnesses in the transfer analysis," *Intria Corp. v. Intira Corp.*, No. 00-CV-7198 (AGS), 2000 WL 1745043, at *3 (S.D.N.Y. Nov. 27, 2000), here the Court will do so because it has "enough information to enable

---

[8] Discovery in this case was stayed on August 5, 2016, at the parties' joint request. *See* Dkt. 13. Neither party has requested that the stay be lifted to allow for discovery relevant to the motion to transfer.

10

the trial court to balance the parties' interests," *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984). *See also Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373–74 (S.D.N.Y. 2006) (finding transfer appropriate where although "Fuji Ltd. does not identify which witnesses it intends to call, those individuals with technical knowledge of the patents-in-suit likely reside in Japan.").

Plaintiffs' other "potential witnesses are located either in Germany or Luxembourg." Pls' Opp. 17; Groothuis Decl. ¶ 13. They argue, nonetheless, that "it is substantially more convenient" for these potential witnesses "to travel to New York than Delaware," Pls' Opp. 18, in part because there are no direct flights to Philadelphia, which has the closest international airport to the District of Delaware Court, *id.* at 16 n.5. This argument is somewhat undermined by Plaintiffs' assertion elsewhere that "the short distance between Delaware and New York" means that travel between the two is not "a considerable imposition." *Id.* at 15. In any event, the Court finds that "[i]f the case is transferred, the hardship of travel on [D]efendant will be eliminated, while the hardship of travel on [P]laintiff[s] will only slightly be increased, since [they] would have to travel from [Europe] regardless of where the case is decided," *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 (S.D.N.Y. 2005), but if the case remains before this Court, both parties and all specifically identified witnesses will be forced to travel to New York.

On balance, the Court finds that the convenience of the parties and witnesses is a neutral factor, not weighing in favor of either party. On the one hand, all nine of the specifically identified witnesses reside or work in Delaware. Most (although not all) of these identified witnesses, however, are party witnesses, whose convenience is given less weight. *See MasterCard Int'l, Inc. v. Lexcel Sols., Inc.*, No. 03-CV-7157(WHP), 2004 WL 1368299, at *7 (S.D.N.Y. June 16, 2004) ("The convenience of witnesses is a neutral factor," where "[m]ost, if not all, of the trial witnesses

in this action will be party witnesses."). Plaintiffs, meanwhile, assert that their own (thus far unnamed) witnesses are located either in Germany or Luxembourg, and these witnesses will have to travel from Europe whether New York or Delaware is the designated forum, although they contend that flying directly to New York is substantially more convenient than continuing on to Delaware. Moreover, based on the parties' representations at oral argument, it is likely that there will be non-party witnesses from at least HSBC and Bank of New York, who will likely be located in New York, and who Plaintiffs view as "essential" to their case. These competing considerations ultimately balance each other out, and the Court treats this factor as neutral.

### 3. Forum's Familiarity With The Governing Law

This factor is neutral as well. The Trust Agreements for the Trusts are governed by Delaware law, but as Defendant acknowledges, other agreements at issue in this case "including the indenture and servicing agreements, are governed by New York Law." Def.'s Mem. 15 n.16; *see* Pls' Opp. 20. Accordingly, both Delaware law and New York law will be at issue in this case. At oral argument, Plaintiffs asserted that the Court should also consider the convenience that would accompany litigating this case here because "a great body of case law has been developed" in the Southern District of New York dealing with arguments and issues related to RMBS. Tr. 28–29. Defendant retorted that "this case is much different" than the "countless cases" involving RMBS that have been previously litigated in New York. Tr. 29. In any event, the courts in both jurisdictions are perfectly capable of adjudicating cases involving RMBS and applying the substantive law of the other states. *See Mak Mktg. Inc. v. Kalapos*, 620 F. Supp. 2d 295, 311–12 (D. Conn. 2009) ("[T]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." (quoting *Hummingbird USA, Inc. v. Tex. GSL Corp.*, 2007 WL 163111, *3 (S.D.N.Y. Jan.

22, 2007))).

### 4. Location of Relevant Documents

"[A]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport." *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995) (quoting *Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F. Supp. 486, 500 (S.D.N.Y. 1992)). Here, Defendant points out that Wilmington Trust's documents are located in Delaware but makes no effort to show that accessing these documents would be more difficult were the case to remain in New York. This factor is therefore neutral.

### 5. Plaintiffs' Choice of Forum

The fact that Plaintiffs are foreign means "[the] assumption [favoring a plaintiff's choice of forum] is much less reasonable," although it does not necessarily mean that its choice of forum is not relevant. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). As the Second Circuit noted in *Pollux Holding Ltd. v. Chase Manhattan Bank*, "when a plaintiff sues in his home forum, that choice is generally entitled to great deference, because it is presumed to be convenient. In contrast, when a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient." 329 F.3d 64, 71 (2d Cir. 2003) (citations omitted). "[I]n many cases, a foreign plaintiff's chosen forum in the United States will not be any more discernibly convenient than the alternatives and, as a result, will not merit a presumption to the contrary." *Medien Patent Verwaltung AG v. Warner Bros.*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010).

In the case of a foreign plaintiff, "the deference due depends on the facts of the individual case: '[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated

by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.'" *Id.* (quoting *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71–72 (2d Cir. 2001) (en banc)). As the Second Circuit has explained in the analogous context of *forum non conveniens*, legitimate reasons for choosing a forum include "the plaintiff's residence in relation to the forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Iragorri*, 274 F.3d at 72. In contrast, a plaintiff's choice of forum to gain a tactical advantage is not considered legitimate. "[T]actical advantage includes benefits from 'local laws,' the 'generosity of juries,' a defendant's 'unpopularity in the region,' or 'the inconvenience and expense to the defendant resulting from litigation in that forum.'" *Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) (quoting *Iragorri*, 274 F.3d at 72). But "[e]ven if the U.S. district was not chosen for such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for a foreign plaintiff." *Iragorri*, 274 F.3d at 71.

Here, Plaintiffs argue that their reasons for choosing this forum are legitimate and should be afforded deference. Plaintiffs rely primarily on the history of how this case ended up in the Southern District of New York—namely, that it was removed from New York State court, where Plaintiffs simultaneously filed this case with six other nearly-identical actions against other defendants. *See* Pls' Opp. 10. Defendant responds that Plaintiffs were engaged in forum shopping because, as Plaintiffs put it, the Southern District of New York "has not been particularly kind to RMBS defendants," and that venue was never appropriate in New York County because M&T Bank's principal office is in Erie County. Def. Reply at 3–4. Even assuming Plaintiffs' reason for choosing to file this case in New York was not illegitimate, the fact that they did so in New York

14

State court with the hope that their multiple cases would be consolidated, does not now provide a valid basis for the case to remain in the Southern District of New York. The factors identified by the Second Circuit as relevant to determining whether to defer to a foreign plaintiff's choice of forum, focus on "convenience or expense." *Iragorri*, 274 F.3d at 72. In other words, while the procedural history may explain why the case was brought in New York State, it does not further the factors relevant to keeping it in federal court here.

In support of their argument against transferring this case out of the Southern District of New York, Plaintiffs also argue that a "large amount of the evidence cited in the Complaint . . . arises from litigation in New York" and that the "entire idea of residential mortgage-backed securities was conceived of, created and sold by New York banks from their Wall Street offices" so this is a "fundamentally New York dispute." Pls' Opp. 11. These considerations also do not bear on the "convenience or expense" to the parties and thus do not support deferring to Plaintiffs' choice of forum. *See Iragorri*, 274 F.3d at 72.

For all of these reasons, particuarly given that Plaintiffs do not reside here, their choice of forum is entitled to limited deference.

### 6. Other Factors

The other factors that guide the Court's discretionary analysis are neutral. The parties agree that the relative means of the parties is a neutral factor. *See* Def's Mem. 15 n.17 ("The parties are large financial institutions with adequate resources to litigate this case wherever it is tried."); Pls' Opp. 22 n.7. Neither party argues that the availability of process to compel attendance of unwilling witnesses is relevant. Lastly, there is no meaningful difference in trial efficiency whether this case is tried in the Southern District of New York or the District of Delaware.

### 7. Balancing

Although a close question, having considered each factor and the circumstances as a whole, the Court ultimately concludes that transfer is appropriate. The locus of operative facts is Delaware, and while Plaintiffs did choose New York as its forum, that choice is given only limited weight because Plaintiffs do not reside in this district, and Plaintiffs' reasons for choosing it are not based on the types of convenience considerations the Second Circuit has recognized as relevant. The other factors are neutral, including the convenience of the witnesses and parties, the forums' familiarity with the relevant law, the location of documents, the relative means of the parties, the availability of process to compel the attendance of unwilling witnesses, and trial efficiency. Based on the totality of the circumstances, Defendant has thus met its burden of establishing by clear and convincing evidence that transfer is warranted.

### CONCLUSION

For the foregoing reasons, Defendant's motion to transfer this action to the United States District Court for the District of Delaware is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 19 and to transfer and terminate the case.

SO ORDERED.

Dated: September 14, 2017
New York, New York

Ronnie Abrams
United States District Judge